T.C. Memo. 2015-157

UNITED STATES TAX COURT

CANDICE E. HOLLIMON, Petitioner, AND FADIL A. M. AL BAKARI,
Intervenor v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28422-13.                     Filed August 12, 2015.

Candice E. Hollimon, pro se.

Fadil A. M. Al Bakari, pro se.

Brenn C. Bouwhuis, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, Judge:  The sole issue before the Court is whether Ms. Hollimon is
entitled to innocent spouse relief under section 6015.[1]  Respondent initially denied

_____

[1]Unless otherwise indicated, all section references are to the Internal

                                                            (continued...)

[*2] Ms. Hollimon's request for relief relating to a deficiency from the 2009 taxable year, but now concedes that she is entitled to relief. However, Mr. Al Bakari opposes relief. We find that Ms. Hollimon is entitled to relief under section 6015(f) for 2009.

FINDINGS OF FACT

Ms. Hollimon and Mr. Al Bakari married in 2000. They initially met when Ms. Hollimon was receiving inpatient care; Ms. Hollimon struggles with bipolar disorder and diabetes.

Ms. Hollimon is a respiratory care practitioner. During their marriage Ms. Hollimon and Mr. Al Bakari established Bay Area Staffing, which provided temporary staff to hospitals. Ms. Hollimon testified that Mr. Al Bakari was the CEO of Bay Area Staffing and managed the business and that she was only an employee. In contrast, Mr. Al Bakari maintains that they ran the business together. According to the Alameda County, California Fictitious Business Name search, Ms. Hollimon and Mr. Al Bakari are both listed as owners of Bay Area

---

[1](...continued)
Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] Staffing during 2009, and it is undisputed that both were involved in the business, which was run out of their home.

Unfortunately, Ms. Hollimon and Mr. Al Bakari's relationship has been rife with abuse. The abuse has not been one sided; it has been perpetrated by both parties, and each of them has requested restraining orders against the other at various times. After one particular incident Ms. Hollimon requested a restraining order against Mr. Al Bakari. That request was granted, and on May 18, 2010, the spouses separated and began living apart. Ms. Hollimon filed for divorce in August 2011.

The Internal Revenue Service (IRS) began an examination for Ms. Hollimon and Mr. Al Bakari's 2009 tax year in April 2011. In June 2011, while living apart and while under audit, Ms. Hollimon and Mr. Al Bakari filed their 2009 joint income tax return. The return included a Schedule C, Profit or Loss From Business, related to Bay Area Staffing. Although the return showed a balance due, Ms. Hollimon and Mr. Al Bakari did not pay the amount.

There is a dispute over who prepared the 2009 tax return. Ms. Hollimon stated that she provided Mr. Al Bakari with her tax information and that he prepared the return. Ms. Hollimon testified that because the restraining order was still in effect, she did not review the return. Instead, she gave Mr. Al Bakari

**[*4]** permission to sign the return on her behalf. Ms. Hollimon also stated that she feared that questioning Mr. Al Bakari about the return could lead to additional abuse. Additionally, she did not know that Mr. Al Bakari did not pay the full tax liability when the return was filed.

Mr. Al Bakari tells a slightly different story. He initially stated that he could not have prepared the return because he did not have any of the necessary information. However, he later testified that he helped prepare the return and that he prepared the Form 8829, Expenses for Business Use of Your Home, attached to the Schedule C for Bay Area Staffing. Further, on the Form 12508, Questionnaire for Non-Requesting Spouse, in response to the question "How were both of you involved with preparing the returns during those tax years?", Mr. Al Bakari checked the boxes stating that both he and Ms. Hollimon "[p]repared or helped prepare the returns", "[g]athered receipts and canceled checks", "[g]ave tax documents (such as W-2s, 1099s, etc.) to the person who prepared the returns", "[a]sked the person who prepared the returns to explain any items or amounts", and "[r]eviewed the returns before signing them". He also wrote on the Form 12508: "The amount owed was sent with the return. (Either a check from our business or a personal check)."

**[\*5]** At the end of the examination the IRS disallowed a portion of the claimed Schedule C business use of home deduction for lack of substantiation and corrected a computational error in the claimed child care credit. Ms. Hollimon and Mr. Al Bakari agreed to the adjustments and signed the Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, consenting to the assessment of tax and additions to tax under section 6651(a)(1) and (2).

On January 30, 2012, Ms. Hollimon filed a Form 8857, Request for Innocent Spouse Relief, for 2008, a year not before us, and 2009. On October 22, 2013, the IRS issued a Final Appeals Determination allowing full relief under section 6015(c) for 2008 but denying relief for 2009. Ms. Hollimon, while living in California, timely petitioned. Mr. Al Bakari later filed a notice of intervention.[2] Before trial respondent conceded that Ms. Hollimon was entitled to relief under section 6015(f), and Ms. Hollimon conceded that she was not entitled to relief under section 6015(b) or (c). Mr. Al Bakari continues to oppose relief.

---

[2]If a spouse has petitioned the Court for sec. 6015 relief, the nonrequesting spouse has a right to intervene in the case under sec. 6015(e)(4). Rule 325; Van Arsdalen v. Commissioner, 123 T.C. 135, 138 (2004). By doing so, the intervenor becomes a party. Tipton v. Commissioner, 127 T.C. 214, 217 (2006).

**[\*6]**  Ms. Hollimon stated that she has always been diligent about paying her taxes and, beginning with the 2010 taxable year, has filed returns separate from Mr. Al Bakari's.

After trial Ms. Hollimon and Mr. Al Bakari filed separate motions to reopen the record, seeking to introduce additional evidence.  The motions will be denied because neither provides evidence that affects our ultimate decision.

OPINION

Married taxpayers generally may elect to file a joint Federal income tax return.[3]  If they do so, each spouse is jointly and severally liable for the entire tax due for that year.[4]  In certain circumstances, a spouse who previously filed a joint return may seek relief from joint and several liability under procedures set forth in section 6015.[5]  If a taxpayer does not otherwise qualify for relief, the taxpayer may be eligible for equitable relief under section 6015(f) if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency".  The Secretary has discretion to grant equitable relief to a spouse who filed a joint return with an unpaid tax liability or a

---

[3]Sec. 6013(a).

[4]Sec. 6013(d)(3).

[5]Sec. 6015(a).

**[\*7]** deficiency.[6] Ms. Hollimon may seek relief only under section 6015(f) because she conceded that she is not entitled to relief under section 6015(b) or (c).

The taxpayer typically bears the burden of proving that he or she is entitled to section 6015 relief.[7] However, if the Commissioner concedes that the taxpayer is entitled to relief and the intervenor opposes relief, it is an open question whether the burden shifts to the intervenor.[8] Nevertheless, because we decide this case on the preponderance of the evidence, we do not need to decide who bears the burden. Both the scope and standard of our review in cases requesting equitable relief from joint and several income tax liability are de novo.[9]

A. Threshold Conditions

The Commissioner has published revenue procedures outlining the factors normally considered in deciding whether section 6015(f) relief should be granted.[10] Although not bound by IRS revenue procedures, the Court can look to

---

[6]Sec. 6015(f)(1); sec. 1.6015-4(a), Income Tax Regs.

[7]Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004).

[8]See Stergios v. Commissioner, T.C. Memo. 2009-15, 2009 Tax Ct. Memo LEXIS 15, at \*11-\*12.

[9]Porter v. Commissioner, 132 T.C. 203, 210 (2009).

[10]See Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding

(continued...)

[*8] them for guidance.[11]  Rev. Proc. 2013-34, 2013-43 I.R.B. 397, outlines seven threshold conditions that the requesting spouse must satisfy before the Commissioner will consider relief under section 6015.[12]  The record clearly establishes that the first six conditions are met, so we focus only on the seventh requirement, which states:  "The income tax liability from which the requesting spouse seeks relief is attributable (either in full or in part) to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income" unless a specific exception applies.[13]  One such exception is abuse.[14]

> If the requesting spouse establishes that he or she was the victim of abuse prior to the time the return was filed, and that, as a result of the prior abuse, the requesting spouse was not able to challenge the treatment of any items on the return, or was not able to question the payment of any balance due reported on the return, for fear of the nonrequesting spouse's retaliation, the Service will consider granting equitable relief even though the deficiency or underpayment may be attributable in part or in full to an item of the requesting spouse.

---

[10](...continued)
Rev. Proc. 2003-61, 2003-2 C.B. 296.

[11]Johnson v. Commissioner, T.C. Memo. 2014-240, at *10.

[12]Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400.

[13]Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. at 399-400.

[14]Rev. Proc. 2013-34, sec. 4.01(7)(d), 2013-43 I.R.B. at 400.

**[*9]** We find that Ms. Hollimon was a victim of abuse. Although the record is clear that each party to the marriage suffered abuse at the hands of the other, Ms. Hollimon testified unequivocally that she was afraid to question Mr. Al Bakari about the return for fear of retaliation. We do not believe that any abuse that Mr. Al Bakari may have suffered at the hands of Ms. Hollimon negates that fear. Accordingly, because Ms. Hollimon has satisfied the threshold conditions, we move to the next step.

## B. Streamlined Conditions

The revenue procedure lays out three streamlined conditions that, if fulfilled, will result in relief under section 6015(f). Those conditions are that: (1) the requesting spouse is no longer married to the nonrequesting spouse; (2) the requesting spouse would suffer economic hardship if relief were not granted; and (3) the requesting spouse did not know or have reason to know of the understatement or underpayment.[15]

We will not analyze all of the conditions because Ms. Hollimon does not satisfy the economic hardship requirement. Although she testified at trial that she would suffer economic hardship if relief was not granted, her testimony was not specific and conflicted with information she provided on her Form 8857. On that

---

[15]Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400.

**[\*10]** form, she reported that she had monthly income of $6,160 and monthly expenses of $5,266. Given this conflicting information, we cannot determine that Ms. Hollimon will suffer economic hardship if denied relief. Accordingly, she does not fulfill the streamlined conditions and we must look to the facts and circumstances test.

## C. Facts and Circumstances Test

A requesting spouse who satisfies the threshold conditions but not the streamlined conditions may still qualify for relief under the facts and circumstances test. The revenue procedure lists various factors to be considered, and no single factor is determinative.[16] The Court considers these factors in the light of all the facts and circumstances.[17]

### 1. Marital Status

This factor will weigh in favor of relief if the requesting spouse is no longer married to the nonrequesting spouse.[18] The requesting spouse is treated as being no longer married to the nonrequesting spouse if she had not been a member of the

---

[16]Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400-403.

[17]See Pullins v. Commissioner, 136 T.C. 432, 448 (2011).

[18]Rev. Proc. 2013-34, sec. 4.03(2)(a), 2013-43 I.R.B. at 400.

**[*11]** same household as the nonrequesting spouse for the 12-month period before the IRS issued its determination.[19]

The IRS issued its determination in October 2013, and Ms. Hollimon ceased living with Mr. Al Bakari in May 2010.  Accordingly, this factor weighs in favor of relief.

### 2. Economic Hardship

If denying relief will not result in the requesting spouse's suffering economic hardship, this factor is neutral.[20]  In accordance with our discussion above, Ms. Hollimon reported income in excess of her expenses on her Form 8857, and we cannot determine that she would suffer economic hardship. Accordingly, this factor is neutral.

### 3. Knowledge or Reason To Know

In understatement cases, this factor weighs against relief if the requesting spouse "knew or had reason to know of the item giving rise to the understatement".[21]  Likewise, in underpayment cases, this factor weighs against relief if "based on the facts and circumstances of the case, it was not reasonable

---

[19]Rev. Proc. 2013-34, sec. 4.03(2)(a)(iv), 2013-43 I.R.B. at 400-401.

[20]Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401.

[21]Rev. Proc. 2013-34, sec. 4.03(2)(c)(i)(A), 2013-43 I.R.B. at 401.

[*12] for the requesting spouse to believe that the nonrequesting spouse would or could pay the tax liability shown on the return."[22]  However, this factor will weigh in favor of relief, even if the requesting spouse knew or had reason to know if the requesting spouse was abused by the nonrequesting spouse and because of that abuse was not able to challenge the treatment of an item on the return or the payment of a tax liability for fear of retaliation.[23]

This case involves both an understatement and an underpayment.  The record is unclear whether Ms. Hollimon participated in the completion of the 2009 return.  Regardless, the record is clear that Ms. Hollimon suffered abuse and was afraid to question anything having to do with the return or payment out of fear of retaliation.  Accordingly, this factor weighs in favor of relief.

4. Legal Obligation

This factor will weigh in favor of relief if the nonrequesting spouse has the "sole legal obligation", arising from a divorce decree or other legally binding

---

[22]Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii), 2013-43 I.R.B. at 401.

[23]Rev. Proc. 2013-34, sec. 4.03(2)(c), 2013-43 I.R.B. at 401-402.

**[\*13]** agreement, to pay the outstanding tax liability.[24]  However, this factor is neutral if the parties are not divorced or separated.[25]

Ms. Hollimon and Mr. Al Bakari are not divorced.  There is no evidence of any separation agreement giving rise to a legal obligation to pay the outstanding tax liability.  Accordingly, this factor is neutral.

5. Significant Benefit

This factor weighs against relief if the requesting spouse "significantly benefited from the unpaid income tax liability or understatement."[26]  Further, if the amount of the unpaid tax or understatement was small and did not provide a benefit to either spouse, the revenue procedure states that this factor will be neutral.[27]  However, this Court has held that this factor weighs in favor of relief if the requesting spouse received little or no benefit.[28]

---

[24]Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402.

[25]Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402.

[26]Rev. Proc. 2013-34, sec. 4.03(e), 2013-43 I.R.B. at 402.

[27]Rev. Proc. 2013-34, sec. 4.03(2)(e), 2013-43 I.R.B. at 402.

[28]Wang v. Commissioner, T.C. Memo. 2014-206, at \*40 (citing Butner v. Commissioner, T.C. Memo. 2007-136, 2007 Tax Ct. Memo LEXIS 138, at \*45-\*46 ("[W]e consider the lack of significant benefit by the taxpayer seeking relief from joint and several liability as a factor that favors granting relief under section 6015(f).")).

**[\*14]** Mr. Al Bakari asserted that Bay Area Staffing paid for items that benefited Ms. Hollimon, which Ms. Hollimon disputes. Regardless, there is no evidence that Ms. Hollimon received a benefit attributable to the unpaid liability or understatement. The amount of the unpaid tax, including additions to tax, is less than $4,000, and there is no evidence that this amount specifically benefited either spouse. Accordingly, this factor weighs in favor of relief under our precedent.

    6. Compliance With Income Tax Laws

This factor weighs in favor of relief if the requesting spouse is in compliance with the tax laws, even if the requesting spouse remains married to the nonrequesting spouse and files separate returns.[29]

From the information in the record, we find that Ms. Hollimon has filed all of her tax returns and paid her taxes both before the marriage and since being separated from Mr. Al Bakari. Accordingly, this factor weighs in favor of relief.

---

[29]Rev. Proc. 2013-34, sec. 4.03(2)(f)(iii), 2013-43 I.R.B. at 403.

**[\*15]** 7. <u>Mental or Physical Health</u>

This factor weighs in favor of relief if the requesting spouse was in poor mental or physical health when the return to which the relief relates was filed or when the request for relief was made.[30]

Ms. Hollimon has struggled with mental and physical health problems for many years, including the period when the return was filed and when the relief was requested. Accordingly, this factor weighs in favor of relief.

8. <u>Conclusion of the Facts and Circumstances Test</u>

After reviewing all of the factors, five weigh in favor of relief for Ms. Hollimon and two are neutral. On the totality of the factors, we find that she is entitled to relief under section 6015(f).

D. <u>Conclusion</u>

On the basis of our examination of the record before us and the parties' arguments at trial, we find that Ms. Hollimon is entitled to relief under section 6015(f) for 2009.

---

[30]Rev. Proc. 2013-34, sec. 4.03(2)(g), 2013-43 I.R.B. at 403.

**[\*16]** To reflect the foregoing and the concessions of the parties,

<u>An appropriate order and decision</u>

<u>will be entered</u>.